on behalf of Mr. Garcia, and I would like to reserve four minutes for rebuttal. Okay, watch your time, thank you. Reversal is required because even after a jury question, the Court refused to define intent. This element required a showing of Garcia's conscious objective. Counsel, I have trouble with your argument on that. It looks like the judge's original instructions covered the elements of the crime, actually plus a little. He gave them the statutory instruction. What you wanted was more of a definition of intentionally, but he'd already instructed on how to use alcohol as a factor, and intentionally is not really much of a term of art. Even small children know the difference between doing something, as they put it, accidentally or on purpose, and I think it was Holmes who said even a dog knows the difference between being kicked over and being kicked. I don't actually see why they needed more. Well, I have several responses to your question. First of all, the jury was instructed that it had to find Mr. Garcia acted intentionally, and that is the way that the indictment was alleged. As to count one, that was not a statutory element, but it became a de facto. No, so you got the benefit of more. It became a de facto element because that's the way the government chose to indict. But that's not. Let me ask you a question, though. I did not see a citation to a case that is held that by simply including something into an indictment or a charging document it does become an element of the offense. The best or the closest case I could find was a case where the parties both agreed, after having inserted something into the charging document, that it could be considered. But I did not see any authority that says that courts can add elements or that lawyers can add elements. Can you cite me to a case that's controlling on the issue? Yes, Your Honor. Judge Tashima's concurrence in Lettier lays out the doctrine of law of the case. And that instructs that if the indictment alleges an element and the court instructs on the element without objection from the government, it becomes an element for purposes of the case. Now, Judge Tashima observed correctly that the majority in that case implicitly held or adopted the law of the case doctrine, which is accepted by circuits around the country. And back to the original question, it did need to be defined for the jury, because in this context it meant specific intent. As the government conceded and stated, specific intent was necessary for the voluntary for, excuse me, for the intoxication instruction. Specific intent is very different from general awareness or general intent or knowingly. So if we adopt your view, then by adding intentional to the charging document, we are essentially converting what would be a general intent crime into a specific intent crime. Yes, Your Honor. And this has happened in cases that specific issue has come up, I believe, in Tapio and Taylor, which are cited in the briefs and also in Judge Tashima's concurrence. Well, what was added to the indictment? What was the language that was added that intentionally, the statute as to the crime? In that instance, it seems that if the indictment says intentionally, you're saying that must have meant specific intent, and they had to be told that. But on the other hand, since the intentionally isn't in the statute at all, then if it was general intent, what's the problem? The problem is the jury was instructed on intoxication, and the government did not object to that instruction. Right. That instruction was given as to both counts. Right. The jury asked a question during deliberations. They said, why does it? Well, I understand that. But what I'm saying is this. You're saying, well, the jury had to be instructed that the intentionally that this one meant was specific intent, not general intent, because you seem to be Well, actually, that was confusing, because originally the Court defined knowingly as being aware of something and not acting through ignorance, mistake or accident. They were not given a definition of intentionally, even though that was alleged in the indictment and in the jury instruction. Okay. They asked a question. They were confused. They didn't know what it meant. And instead of Well, first of all, that's not exactly what they asked. What they asked was, what does intent to commit mean? Well, yes, Your Honor, but intent to commit was referencing the instruction. Right. So they were really asking, what does that instruction mean? Well, they're asking, what intent are we supposed to apply for the intoxication instruction? And the government, during the discussion, said it applies to specific intent. But she objected to the defendant's request to have the jury instructed that intent meant a conscious objective. Well, what she objected to and what the district court objected to, and this is the case I don't know what to do with, was the jury – what you actually asked for and what – I don't know if you tried the case, but whoever was there asked for was a – was the word willfully. And he said, I don't want to put willfully in here because willfully is not in the statute. Well, Your Honor, the defense instruction was very clear. Willfully is a word of many meanings, as the Supreme Court has observed. It means different things in different contexts. So it wasn't so clear. The defense instruction made it clear that it had to mean conscious objective. If you look at the defense instruction. I thought the defense objected to use the word willfully. Excuse me? I thought the defense object – instruction used the word willfully. No, Your Honor. Well, it did include the word willfully, but the instruction said intent means to act with a conscious objective, that is, willfully and deliberately. At this point, your whole argument depends on our treating Judge Toshima's separate concurrence for himself only, as though it were the law established by Lettier instead of following the majority opinion in Lettier. The majority opinion did not decline to apply law to the case. They just felt that – The majority expressly declined to express an opinion on whether the inclusion of the extra word in the indictment was harmless surplusage or whether it became a de facto element. Well, they declined to express an opinion, but they did not – I just quoted it. They declined to express – they expressed no opinion. Yes, Your Honor. They expressed no opinion. They did not reject the law of the case. And then – So you're, in essence, asking us to adopt Judge Toshima's comments or statements in his concurring opinion as the law of the Ninth Circuit? Yes, Your Honor. I have two points to make on that. First, I would ask for you to adopt his reasoning, and that's what other circuits around the country follow. But also, when it comes to Count II, in Count II, specific intent was a statutory element under SAG, under Sneezer. So the Court erred initially in refusing the defendant's request and instruction as to Count II. So whether or not you adopt the law of the case, Count II has to be reversed. And why don't we have some Ninth Circuit case law that says intentionally does not need further definition? No, Your Honor. The Ninth Circuit case law cited by the government has to do with knowingly. And, in fact, the United States Supreme Court in U.S. v. Bailey – Accordingly, sometimes you do need additional instruction and sometimes you don't. It depends on whether it's a deliberate ignorance case. Well, that's in regard to knowingly. Intentionally is different. Well, intentionally, specific intent is an esoteric term, as the United States Supreme Court has characterized it. But how does it help? This is what I am having trouble with. What you – the instruction you asked for was willful and deliberate and not through ignorance, mistake or accident. What you got was knowingly and intentionally not through ignorance, mistake or accident. So the difference is that he didn't say willful and deliberate. How does that tell anybody anything about specific intent? No, Your Honor. The requested instruction, if you look at it, as described in the briefs and in the instruction, is it was the defendant's conscious objective to engage in the act. And that is what specific intent means. That is what the Supreme Court said in Bailey that specific intent means. That is what it means under the model penal code. That is what intentionally means in Arizona, which is a code state. Every time a jury hears a case in Arizona, that is the way intentionally is defined. Are you saying intentionally means willfully? I'm saying that intentionally means with – Does it mean willfully? Intentionally means with a conscious objective. But you also asked for willfully. Excuse me? But you also asked for willfully, and that's where the district court got concerned. Well, Your Honor, in the context of the instruction, it was clear what willful meant. It meant acting with a conscious objective. No. Willfulness in Federal law means something different from intentionally. Intentionally means you accomplished the act. Ordinarily, though the statutes vary a little, willfully means you had an intent to violate the law. You knew that it was illegal and you intended to violate the law. Your Honor, sometimes that's what it means. Tax evasion. Excuse me. I'm sorry. Sometimes what that – that's what willfully means. Often that's what it means, but it's not always what it means. And here, I don't seem to have the statute in my authorities' materials. Read the critical words again of the statute. The statute for count 1, which is penetration, only requires a knowingly mens rea. So all you need is scienter there. All you need is awareness there, under the statute, but not under the law of this case. Okay. Now, the other count, what does the statute say? As to count 2, it requires an intentional touching, a touching with the intent to gratify, arouse, or degrade. And this Court has said that that means conscious objective, and that's United States v. South. Nothing willful there either. It just means you intend precisely what the statute says. Would you – would the Court like to hear argument on the unreliability issue? On what issue? On the unreliability of the hearsay used to support the pattern enhancement. I would like to hear about the sentencing. Did you have a sentencing issue? Yes, Your Honor. The procedural unreasonableness? Yes. What was the actual sentence? The sentence was 40 years. Right. And there was a question about the pattern of sexual abuse. Okay. And there was the government's brief originally relied a lot on the fact that there were videotapes that the judge could see, but it turns out there weren't videotapes that the judge could see. Yes, Your Honor. So essentially there was fact-finding based on what? Based on very little. There was no opportunity to cross-examine. As you mentioned, there was no opportunity to view the demeanor. In that circumstance, significant indicia of reliability are necessary, and there were no indicia of reliability here. M.M.'s allegations, which were the ones that the government primarily relied on in its brief, were very remote. She was 18 years old when she made the allegations, right after the current offense. But she alleged things that happened when she was 8 or 9 years old. Does that really matter? The fact that time may have passed and someone states that they were molested or touched when they were younger, does that really affect the reliability of the statement? Yes, Your Honor, it does for several reasons. First of all, there's a high risk of unreliable or even false memory when that much time has passed. If you look at cases that talk about reporting of accusations, typically it's more reliable if it's immediately reported. Also, Mr. Garcia was 21 at the time of the alleged offense here. So at the time of her allegations, he would have been 11 or 12. She only alleges touching, so again, specific intent is necessary. He well may not have even reached puberty yet, so that's her allegations certainly don't prove that he was acting with a sexual intent. Also, she's very vague. She doesn't remember important details about whether her underwear was on or off, whether her own. Hold on. Which one hadn't reached puberty? Mr. Garcia may not have reached puberty when he allegedly did anything to M.M. because this is something that happened very long ago and he was pretty young at the time of the offense. How old? He was 21 at the time of the offense, so he would have been 11 or 12 at the time of these accusations. Also, she had a motive to do it. Well, does that even count? I mean, has anybody ever litigated that? If you have a history of sexual abuse when you were 11 or 12 years old? I mean, is there not some assumption in this statute that you're talking about something for which you would have been held legally responsible as an adult? Well, you have to establish the elements of the offense, and when it comes to intentional touching, you have to prove specific sexual intent, and I believe that's very difficult. But moreover, he couldn't have been convicted of that crime if he was 11 or 12 years old. I presume. I'm not sure that that's the case because juveniles are prosecuted under that statute and young juveniles are. But it is problematic for the State's proof in this case. Let me ask you another question, but doesn't the – if there are various touchings or occurrences of the victim, not M&M, but the other, the actual victim in this case, isn't that sufficient to create a pattern? No, Your Honor. There were only two allegations in the indictment. Are you talking about the same victim? Yes. And they both occurred on the same occasion, and the guideline is clear that you have to have separate occasions. So the charge defenses do not warrant the enhancement in and of themselves. Basically, there were two – there were allegations with regard to two of the other siblings. Yes. One of whom was this child who had a hard time, who was apparently mentally challenged and had some problem explaining things, and the other was this girl who was talking about some time ago. Yes, Your Honor. Was there a request for an in-person – for a hearing for cross-examination or anything like that? Your Honor, the defense objected that these – that the evidence was unreliable. That was all the defense had an obligation to do. It was the government's – Did you ask for an evidentiary hearing? The defense proffered that the evidence was unreliable. I heard that part. It may or may not have been unreliable as it stood. Did the defendant ask for an evidentiary hearing? That's a separate question from whether it's reliable. The defense did not request a hearing, but it was the government's burden to meet its burden of proof, which it did not do. Okay. Thank you very much. We'll give you a minute or so in rebuttal. Thank you. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson, on behalf of the United States in this matter. I've got a couple of questions about the prior two events, whether they were – the evidence was sufficiently reliable for the two-level bump. Unless I'm remembering the wrong case, is this the one where the government's brief said that the judge had been – had furnished a videotape and had watched the videotape of the interviews, and then correction pages were put in, saying there was no videotape, the judge had not been given a videotape? Well, the judge didn't view the videotape, is what the government said. Yes. The government's brief originally was incorrect because it said there was a videotape of the judge. And just to clarify. Was there a videotape? There's a videotape, but there's no indication of the fact that the – Did the government put – did the government give the videotape to the Court? No. So the brief said it, but it wasn't so, and you corrected that. That is correct. Now, the brief also said that an experienced interviewer – I can't remember her name right now – did the interview, and then I looked at the interviews. On one of them, I couldn't see what the name of the interviewer was. The pages that were furnished to us, looking at ER 347, 348, don't have it. On the other interview, it wasn't that person, evidently. Page 391 of the excerpt says, I'm Ms. Winona, which is a different person from the experienced, capable interviewer that the government said conducted the interview. Was that also an error by the government? Yes. I have to admit, Judge, I did not catch the difference between the two interviews. You didn't notice. What about the other interview? Who did it? Did the person do it who the government's brief said did it, or was it somebody else? It's my understanding it was the ones that were identified was the woman that did the interview. My understanding sort of doesn't do it for me, after all these other errors to the government's advantage. I want to know if I can believe the understanding. Excuse me one second, Your Honor. I mean, that video error, that's a huge error to the government's advantage. And then the other error, this experienced person did it, and it's evidently not true because of what it says on page 391 of the excerpts. That's a pretty important error. And I don't think it's a bad error, Your Honor, since you're asking us to treat it as reliable based on who did it, and that's not who did it. I don't want to take up your whole argument. I mean, I'm sorry, Your Honor. Let me ask you something else about it. I looked at the two interviews, and as for the boy's interview, there's no particular reason to think that the boy's lying, but it's evident that he's pretty disabled mentally, and I just don't see how we could take that interview as establishing what happened with the boy. And with the girl, the interview looks, we don't know who did it. At this point, I can't take the government's word for it. It looks kind of suggestive, and most important, the girl seems awfully vague and just seems to be saying yes to leading questions. I don't know. The hearsay objection, of course, is irrelevant because the evidence rule makes it irrelevant. Hearsay is okay in sentencing, but it has to have sufficient indicia of reliability. I don't see why it does. Roberts, and again, actually, the standard is minimal indicia of reliability. I'm sorry, I can't hear you. The standard is minimal indicia of reliability. Is that right? I don't remember the words being minimal. I'm voting for U.S. v. Petty. As I remember the words being minimal. Well, but this is, I mean, here we have a huge sentence. It was already a 30-year minimum, right? Is that right? That is correct. Right. I just said about minimal. That's not true. It says right here at 6A1.3a, sufficient indicia of reliability to support its probable accuracy. That's what the guideline says. That's the words. And this was being used for how much of an enhancement? Actually, it ended up being a one-level enhancement under the guideline. But more than that, the district court relied on it. That's correct. Not only for the one-point enhancement, but for a 40-year rather than 30-year sentence. That seemed to be the bulk of what he was relying on. He certainly relied on these transcripts. He relied on these transcripts to enhance the sentence, to enhance the guideline range. Right. And basically, the guideline range without this enhancement was 360 months to life. With this guideline range, it was life. Okay. And the court imposed a 40-year sentence. Right. So it had an essentially a 10-year impact, or arguably a 10-year impact. Arguably, yes. Right. So you would think that you need something pretty reliable. Not just a little reliable for that much of an impact. Okay. Yes, I agree with that. And with the transcript, the Court could see, as you can see, how the questioning was done, what was actually said. It wasn't a summary of anything. It was an actual Q&A that was done. The Court could judge whether there was any leading, you know, attempts to lead the child, any attempts to impute memories to the child falsely. The Court had all that in front of it, exactly what had happened at these interviews. And the Court make did not abuse its discretion in relying on those documents. Why is that? Because there was a Why were they sufficiently reliable so that it wasn't an abuse of discretion? Because, again, for all those reasons I just stated, and there is some evidence Why could you rely on vague statements that are hard to understand at all from a retarded boy? Again, there was no motivation for, as the government argued in its brief, there to fabricate anything. But what about the fact that, is she right that if this girl's story was correct, that the boy was 11 years old? I would have to check the record on that. I am not sure, actually, Your Honor. Would you think that was pertinent? It would be if it was true, yes. I think it would be. But, again, as the defense counsel pointed out, you can still be committing these acts as a juvenile if you have the requisite intent. And as I suppose, then, for little kids playing doctor, that would be enough for the five-level bump? No, because you would not have the requisite intent in that scenario. Children 4, 5, 6, 7 years old sometimes play doctor. I'll show you mine if you show me yours, that kind of thing. Right. And the government is not arguing that make a five-level bump? No, because, again, in that scenario, you would not have the requisite intent you would need for a violation. Well, how do we know he did here? What do we know? Was there a finding that there was intent? Did the district court find intent? What the district court did not make specific findings. He just said that the evidence that was presented to him, which was the transcripts, was sufficient for the purpose of sentencing, was basically what he said.  Again, considering the fact that the district court did not make specific findings, this is all very disturbing, because we're talking about 10 years of a man's life based on a seven-page transcript where the judge never did see the individuals, much less have an opportunity to cross-examine, and with no actual findings. I understand that we get fairly loose about facts and sentencing, but the question is, do we get this loose? Again, as far as the going back to the female. I'm sorry? Going to the female victim. When she said in the transcript was that the defendant tried to insert part of his body into her private part, I think from that you could infer intent from that statement, if you accept that statement. Well, let me back up to something. Okay. Was the judge told the truth about who conducted the interviews? I don't remember anything in the record that the judge was told anything about who conducted the interviews. I know we were told something that was false. About who conducted it. Again, I did not recall seeing anything in the record that the judge was advised. Okay. We were told that the interviews were conducted by a trained forensic site interviewer, Nicole Satterwhite, but actually at least we don't have record that enables us to tell if that's true for the girls' interview, and we do have record that shows us that that was a false statement to us with regard to the boys' interview. And I apologize for that, Your Honor. Good. Now, on the girls' interview, I look at the interview, and she does say the words you just quoted, but then she's asked a number of details. Did you have your underwear on still? I can't remember. What was he doing with your privates? I don't know. He was just touching. Some of the statements, they look true, they look plausible, and they look bad for the defendant. And then others, were you standing up or sitting down or what was going on? I can't remember. I just – and then on the shower, she can't remember if she was in the shower or in the  And then she can't remember if he was in the water or if he had his clothes on or if he had his clothes off. Does it get clearer on the parts that I haven't focused on here? No. I think that's a fair summary of what the transcript shows. Where does she say when it was? Do you know that? She says it was when she was 8 or 9, and that's at page ER-3, either 398 or 401. And let's see, how old would he have been when he did this with a girl, and how old – she would have been 11 or 12, was that? She was 8 or 9. She was 8 or 9. She was 8 or 9, and I'm trying to figure out what her – his age was. Her age was at the time of the interview. And she is how old? That's not critical. I guess, frankly, if I were looking at this as a district judge, I'd make nothing of the interview with the boy, because even though he's undoubtedly trying to be truthful, he just can't really express himself with enough clarity to be understood. And my guess would be that the defendant did with the girl just what the government says he did with the girl. But I don't know if that guess would be good enough for a five-level bump, because I think the burden's on the government to make it showing that the evidence is sufficiently reliable, and it's more likely than not. Is that right? Well, more than that, clear and convincing. I know you argue about that because of the five versus one, but I don't know what difference it makes, because you went from 30 years to life. The normal standard for a five-level departure would be clear and convincing. And the actual impact was from 30 years maximum to life maximum. The actual impact. As to the guideline. Excuse me, Your Honor. As to the guideline, right? That was the difference. The difference was 30 years to life to life. Right. That was the difference. Right. So you went from a 30-year sentence to life sentence to a life sentence, and then the court varied downward to 40 years. Right. Right. Did the judge, incidentally, make the guidelines calculation? Did he say what the guidelines calculation was? I believe he did, and I believe he adopted the pre-sentence report. What about the instruction? You want to talk about it? I'm out of time, so it's unless you're dying to talk about the instruction. The instruction, the government's position is the court doesn't need to reach the issue of whether it became a de facto element or not, because intentionally is a common enough word that further definition was not needed, and therefore the court did not abuse its discretion in how it was used. But there is a difference between general and specific intent, and it did matter here. Again, though, intentionally is a word that the juries can understand. As a matter of fact, it's not usually defined. Actually, in my experience, it's not usually defined. As a matter of fact, there's no model Ninth Circuit instruction on intentionally. So what language was she relying on? What? Go ahead. I was just going to ask you that. As a district judge, I don't think that there is a model Ninth Circuit instruction on intentional. But let me ask you a question. I know you're out of time, but I just have to ask you this. I'm interested in this idea that by stating something in a charging document, it then necessarily becomes an element that has to be proven or has to be explained to the jury. And I'm having trouble with that. I don't know of any case that so holds. And I can see some other consequences of saying that to be the case. So are you aware of any cases that say that simply by the courts can add elements to statutory offenses simply by inserting something into a charging document? As far as solely to a charging document, I am not aware of any. There are cases that were cited by Judge Tashima from other circuits that said the combination of in the indictment plus the court instructing the jury on, with adding the element, makes it a de facto element. But this Court has not ruled on that yet. But this isn't critical to this case in any event, because there were two charges for a different reason, which is there were two charges. One of them did have intentionally in the statute. So if there was a problem, there was a problem. And it doesn't really matter. The other instruction doesn't really matter. I mean, the other count. I mean, if there was a reversible problem, there was one. Right. And the government is intentionally, is sufficiently a common enough word. Right. I understand that. But this whole issue about the indictment overindicting and overcharging just seems like a red herring in this case. It doesn't seem to matter. I do not think you need to reach that issue in this case. Okay. Thank you very much. Counsel? You don't need to talk to us for a minute, or you may talk to us for a minute. Yes, Your Honor. I would like to address that point. It is important to this case, as I explained and as Judge Teshima explained, it did become a de facto relevant count. Yes, but I mean in the following way. If you're right, there were two counts anyway. And if you're right about the instruction, then there's a problem about the instruction with regard to the count as to which the intentional was necessary. Yes, Your Honor. So this doesn't matter, because if we have a problem, we have a problem. Well, yes, we have a problem. Of course, we're asking that both convictions be reversed. So that's why I think it matters. Yes, that's why it matters. But even if you decide that you're not going to follow the law of the case doctrine, count two would have to be reversed and the court and the case would have to be remanded for resentencing because of the concurrent bundled sentences. Okay. Thank you very much. Thank you. Thank you to both counsel. The case of United States v. Garcia is submitted.
judges: Benitez, Kleinfeld, Berzon